OPINION OF THE COURT
Robert F. Julian, J.
relief requested: A ruling on whether or not opinions by a *52 nurse practitioner are sufficient to establish a prima facie case for patient retention.
holding: The opinions offered in this case establish a prima facie case.
discussion: Petitioner seeks the retention of the respondent at the Central New York Psychiatric Center (CNYPC) pursuant to Correction Law § 402. The respondent carries a psychiatric diagnosis of paranoid schizophrenia. The respondent’s counsel was notified in advance of the hearing date that the petitioner intended to rely on the testimony of a nurse practitioner to establish a prima facie case that respondent was dangerous to himself and others and, thus, should be retained at CNYPC. The respondent objected and the court, in response to the interposed objection, ordered that the proposed testimony of the nurse practitioner be taken as an offer of proof on April 3, 2003. Thereafter, counsel for the parties have fully briefed this issue.
Additionally, the respondent seeks a ruling excluding certain alleged hearsay contained in his hospital records. The court reserves on this issue pending a further hearing regarding this application.
The respondent was interviewed on January 29, 2003, upon admission to Central New York Psychiatric Center and subsequently followed as a patient by Lisa Zawalski, N.P. (hereinafter the nurse practitioner), who holds a Masters of Science in Nursing degree as a psychiatric nurse practitioner from Vanderbilt University and is licensed as a nurse practitioner by the State of New York.
The nurse practitioner is employed by CNYPC. Her conduct at that facility is governed by a collaborative agreement in which she is supervised by the Chief of Psychiatry, Dr. Lawrence Farago, and Dr. Pace, the Associate Clinical Director and Supervising Psychiatrist. The collaborative agreement provides for a three-month review of selected charts by the psychiatric staff of those patients followed, i.e., given care and treatment, by the nurse practitioner. The nurse practitioner has all of the practice rights of a physician except for the requirement of supervision and dispute resolution contained in the collaborative agreement. Under the collaborative agreement any dispute between the supervising physicians and the nurse practitioner regarding a patient’s care and treatment will be resolved in favor of the supervising physician. The nurse practitioner was assigned a case load upon her employment at CNYPC that included the respondent. Her first evaluation of the respondent *53 was in January of 2003. Thereafter, the nurse practitioner saw the respondent daily on the ward and has weekly sessions with him to evaluate his status. Based on her care and treatment of the respondent, she formed the opinion that he was not ready for discharge and that his continued retention was indicated because he was a danger to himself and others. The nurse practitioner then requested that Dr. Pace also evaluate the respondent. Dr. Pace concurred with the nurse practitioner’s opinion and pursuant to the Mental Hygiene Law entered a diagnosis and order that directed the respondent’s retention. The respondent requested a hearing pursuant to section 402 of the Correction Law and on February 27, 2003, the Honorable Anthony F. Shaheen, J.S.C. ordered that the respondent may receive an independent examination by “a psychiatrist, psychologist or physician to examine and testify at a hearing upon the condition” of the respondent at state expense.
It is undisputed in the offer of proof that the ultimate decision to retain or discharge the respondent was that of a physician and that the nurse practitioner participated in that decision. Article 9 of the Mental Hygiene Law relating to the hospitalization, care, and treatment of patients requires the evaluation and medical opinion of physicians for inpatient admissions and retentions. (Mental Hygiene Law §§ 9.27, 9.31, 9.37, 9.39.) Thus, the Legislature has clearly articulated a policy that decisions to hospitalize and retain the mentally ill are medical decisions to be made by physicians.
The questions presented to this court are: may a nurse practitioner practicing pursuant to Education Law § 6902 and 8 NYCRR 64.4 and 64.5 at a retention hearing give opinions and basis therefor supporting an application for retention to the court sufficient to make a prima facie case?
The Legislature has not required the testimony of a physician to make a prima facie case in a matter such as the case at bar, and thus it is left for the court to determine this matter exercising its duty to apply and interpret the common-law standards for making a prima facie case. The guidance of the Legislature in this matter is inferentially provided by section 6902 (3) (a) of the Education Law which allows a nurse practitioner to diagnose illnesses and physical conditions and engage in the performance of therapeutic and corrective measures within a specialty area of practice, in collaboration with a licensed physician qualified to collaborate in the specialty involved, provided such services are performed in accordance with a written practice agreement and written *54 practice protocols. It is undisputed that in the case at bar the nurse practitioner whose testimony is propounded has seen and cared for the respondent within the confines of a written practice agreement and written practice protocols. Her actual experience with this patient prior to the decision to retain him was not extensive but sufficient to allow for an opinion.
The Legislature has granted to nurse practitioners the ability to diagnose and treat within the confines of his/her practice agreement and protocols. It is axiomatic that a patient’s treatment plan, discharge plan and discharge are a part of the process of diagnosis and treatment. While the ultimate medical decision to discharge or retain a patient is the exclusive province of the physician pursuant to Mental Hygiene Law § 9.27 et seq., that decision is performed within the context of the collaborative treatment regime with the nurse practitioner as set forth above.
In the case at bar the nurse practitioner is functioning under a practice agreement, has treated this patient, and is in agreement with the physician regarding the retention of this patient. The nurse practitioner is well situated to give sworn testimony regarding the signs, symptoms, treatment, response to treatment, therapeutic options, as well as opinions within a reasonable degree of scientific certainty regarding ultimate diagnosis and prognosis, including treatment options such as discharge. Since this nurse practitioner is empowered to make diagnoses as to whether or not this patient is a danger to himself or others pursuant to section 6902 (3) (a) of the Education Law, these opinions and their basis may be given in court within a reasonable degree of scientific certainty. Unlike physicians who have broad powers to diagnose and treat and may give opinions regarding the quality of care performed by other physicians and diagnose patients based on medical records alone, the role of this nurse practitioner pursuant to section 6902 (3) of the Education Law and 8 NYCRR 64.4 and 64.5 is to provide “diagnosis of illness” and the “performance of * * * corrective measures” “in collaboration with a licensed physician.” Because this nurse practitioner in the offer of proof opines based upon her treatment of the respondent that the respondent is a danger to himself and others, the witness’ testimony establishes a prima facie case. “In order to retain a patient in a hospital for involuntary care, the hospital must establish by clear and convincing evidence that the patient is mentally ill and in need of further treatment, and that the patient poses a substantial threat of physical harm to himself or to others” (Matter of John P., 265 AD2d 559, 559 [2d Dept 1999]).
*55 The respondent’s objections that the nurse practitioner is not a physician, is freshly out of school, and has not had a long history of treating this patient goes to weight of the evidence. Given the substance of the testimony presented in the offer of proof, the standard is met for the purpose of establishing a prima facie case.
The court rejects the argument of the respondent that cases cited which do not allow nonphysicians to testify with regard to the standard of care in medical malpractice cases are relevant or instructive to the court. In a medical malpractice case the issue is whether or not the defendant physician has deviated from the standard of care. The courts have held that in most situations the expert must be a physician familiar with the standard of care. (Fiore v Galang, 64 NY2d 999 [1985].) In this case the nurse practitioner by statute may diagnose and treat patients in collaboration with a physician. Thus, the court finds that a nurse practitioner may also testify and give opinions regarding diagnostic treatment regarding a patient being treated by the nurse practitioner in collaboration with a physician pursuant to law. In this case, those opinions have sufficient weight to make a prima facie case for retention.
The respondent pursuant to law is granted John Doe status and his identity shall not be publicly disclosed.