OPINION OF THE COURT
Eugene E. Peckham, J.
*1055 Petitioner seeks the retention of respondent at United Health Services Hospitals (UHS) pursuant to Mental Hygiene Law § 9.39. A previous hearing was held on this matter and this is a rehearing pursuant to Mental Hygiene Law § 9.35.
The issue presented is whether a patient may be retained upon the authorization of a psychiatric nurse practitioner practicing under Education Law § 6902.
Section 6902 provides:
“3. (a) The practice of registered professional nursing by a nurse practitioner . . . may include the diagnosis of illness and physical conditions and the performance of therapeutic and corrective measures within a specialty area of practice, in collaboration with a licensed physician qualified to collaborate in the specialty involved, provided such services are performed in accordance with a written practice agreement and written practice protocols. The written practice agreement shall include explicit provisions for the resolution of any disagreement between the collaborating physician and the nurse practitioner regarding a matter of diagnosis or treatment that is within the scope of practice of both. To the extent the practice agreement does not so provide, then the collaborating physician’s diagnosis or treatment shall prevail.”
It further provides in subdivision (3) (b) that the nurse practitioner may prescribe drugs in accordance with the practice agreement and protocols.
In two cases Justice Julian of Oneida County has held that a psychiatric nurse practitioner “may also testify and give opinions regarding diagnostic treatment regarding a patient being treated by the nurse practitioner in collaboration with a physician pursuant to law.” (Matter of William G., 196 Misc 2d 51, 55 [Sup Ct, Oneida County 2003]; Matter of Carol A., 6 Misc 3d 497 [Sup Ct, Oneida County 2004].) In William G. the requested retention was pursuant to Correction Law § 402, and in Carol A. the case involved forced medication pursuant to Mental Hygiene Law § 33.03. Thus neither case involved the same statute as the present case, although the issue of continued psychiatric treatment of the patient over objection is present in all three cases. The holding in each case was that the testimony of the nurse practitioner was sufficient to establish a prima facie case, but in each case the required forms were signed by the physician.
*1056 Mental Hygiene Law § 9.39 (a) provides that the director of a hospital for treatment of the mentally ill may admit and retain a patient alleged to have a mental illness for treatment if there is a substantial risk of physical harm to himself or others provided
“[t]he director shall admit such person pursuant to the provisions of this section only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of this section. Such person shall not be restrained for a period of more than forty-eight hours unless within such period such finding is confirmed after examination by another physician who shall be a member of the psychiatric staff of the hospital.”
Thus the statute requires examination and certification by two physicians within 48 hours, one of whom is on the hospital’s psychiatric staff. If the patient does not agree to remain in the hospital, he or she is entitled to a judicial hearing within five days after application to the court for a hearing. (Mental Hygiene Law § 9.39 [b]; § 9.31 [c].)
A physician is defined in Mental Hygiene Law § 1.03 (8) as a “physician licensed to practice medicine in the state of New York.” Similarly, Education Law § 6522 states: “Only a person licensed or otherwise authorized under this article shall practice medicine or use the title ‘physician.’ ” Education Law § 6524 requires that to qualify for a license as a physician a person must have received an M.D. or D.O. degree. Ms. Peppard testified she has an M.S. degree in nursing, but not an M.D. or D.O. She is licensed as a nurse practitioner.
Form OMH 474, “Emergency Admission—Section 9.39 Mental Hygiene Law,” filed in the hospital records for respondent (exhibit 3) bears the illegible signature of a physician, which according to the testimony is that of Dr. Leslie Major, director of psychiatry at UHS, and also the signature of Lora Peppard, N.P Lora Peppard is a psychiatric nurse practitioner licensed pursuant to Education Law § 6902, whose collaborating physician is Dr. Major. However, she is not a physician. Thus the required admission form was not signed by two physicians.
The Third Department has recently held in People v Reynolds (307 AD2d 391 [3d Dept 2003]) that a physician assistant may not authorize the drawing of blood to determine intoxication pursuant to Vehicle and Traffic Law § 1194 since the statute *1057 requires the blood to be drawn under the supervision of a physician. In effect, the holding is that where the statute requires action by a physician it must be done by a physician. In a similar vein is Matter of Mental Hygiene Legal Serv. v Department of Health (Sup Ct, Albany County, Oct. 30, 1992, Cobb, J., RJI No. 01-92-ST 3765) which was a declaratory judgment action involving a Department of Health regulation which authorized a physician assistant to execute an emergency request for removal to a psychiatric hospital pursuant to Mental Hygiene Law § 9.57. The Court held that since the statute required that a physician execute the request it could not be done by a physician assistant and therefore annulled the regulation.
A physician assistant is registered to practice only under the supervision of a physician. (Education Law § 6542.) This is similar to the requirement that a nurse practitioner can practice only with a collaborating physician whose diagnosis and treatment decisions must prevail. (Education Law § 6902 [3] [a].) In both cases, by statute, the ultimate decision-making authority and control rests with the physician.
In People v Reynolds (supra), the argument was presented that a physician assistant practicing under the supervision of a physician ought to be able to do everything that the physician could do. The Court said:
“We acknowledge that this is a compelling policy argument inasmuch as the licensure of physician assistants was predicated upon the shortage of physicians and the need for the provision of health services that otherwise would be unavailable in many areas of the state. To the extent that the statute, as written, fails to advance these objectives, the solution is not for this Court to adopt a strained interpretation of the statute but, rather, for the Legislature to adopt an appropriate amendment thereto.” (At 391-392 [citations omitted].)
This court agrees. Where the Legislature has prescribed that an action be taken by a physician, it must only be taken by a physician licensed to practice medicine and not by someone supervised by or collaborating with a physician. Mental Hygiene Law § 9.39 requires authorization by two physicians to admit and retain a patient in a psychiatric hospital against his or her will. Any change in the law requires action by the Legislature. Certification by a psychiatrist and a nurse practitioner does not comport with the unambiguous language of the statute.
*1058 The court has been advised that respondent has been transferred to the Greater Binghamton Health Center, a psychiatric hospital. Nevertheless her initial retention at UHS violated the statute, since it was not authorized by two physicians within 48 hours. Because respondent continues to be retained in a hospital against her will the issue is not moot.
It is therefore ordered that the director of the Greater Binghamton Health Center shall immediately release Mary Jane E into the community.